Ralph A. Kinmont v. Commissioner. R. William Kinmont v. Commissioner.
Kinmont v. Commissioner
Docket Nos. 53749, 53877.
United States Tax Court
T.C. Memo 1959-163; 1959 Tax Ct. Memo LEXIS 86; 18 T.C.M. (CCH) 711; T.C.M. (RIA) 59163; August 20, 1959
*86 Held, no valid partnership for income tax purposes was created between petitioners and their junior children when the evidence shows no active participation, no real capital contribution, and no control over partnership distribution or partnership affairs. Curtis C. Legerton, Esq., 6331 Hollywood Boulevard, Hollywood, Calif., for the petitioners. Michael P. McLeod, Esq., and R. E. Maiden, Jr., Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined the following deficiencies in the petitioners' income tax: Docket No.
Year
Petitioner
Deficiency
53749
1943
Ralph A. Kinmont
$51,727.40
53749
1944
Ralph A. Kinmont
33,277.37
53877
1943
R. William Kinmont
54,039.95
53877
1944
R. William Kinmont
34,815.83 The issue in these consolidated cases is whether or not the minor children of each petitioner should be recognized as partners in the Kinmont Manufacturing Company for the years 1943 and 1944. Findings of Fact Some of the facts have been stipulated and they are hereby incorporated by this reference. R. William Kinmont, a resident of Bishop, California, filed *87 his individual income tax returns for the years here involved with the then collector of internal revenue for the sixth district of California. Ralph A. Kinmont, a resident of Covina, California, filed his individual income tax returns for the years here involved with the then collector of internal revenue for the sixth district of California. William and his wife June have two children, Beverly Jill, born on February 16, 1936 and Robert Haines, born on March 16, 1937. Ralph and his wife Grace also have two children, Susan Marie, born on July 9, 1938 and Richard Clarke, born on August 7, 1940. The Kinmont Manufacturing Company, a corporation organized under the law of California, hereinafter sometimes called the corporation, was formed in 1919 by William's father, Robert F. Kinmont, and Ralph's father, Frank A. Kinmont, and William A. Fairburn, to carry on a general machine repair business. Shortly thereafter Fairburn sold his interest to the other two shareholders, who then held all the stock of the corporation in equal amounts. Frank A. Kinmont died in 1934 and his shares of stock in the corporation were acquired by Ralph. On May 6, 1941 Robert F. Kinmont transferred all of his *88 shares in the corporation to William. so that on August 31, 1942 the two petitioners here, William and Ralph, were the stockholders of record of all the issued stock of the corporation. The corporation reported on its returns for 1939, 1940, the eight months ended August 31, 1941 and the fiscal year ended August 31, 1942, the amounts of $1,188.08, $21,368.64, $39,895.09 and $57,417.07, respectively, as net income. On September 15, 1942 William and Ralph, together with their wives and minor children purported to form a partnership known as the Kinmont Manufacturing Company, hereinafter called the partnership, for the purpose of engaging in the general machine shop and manufacturing and sales activities formerly carried on by the corporation. The agreement contained the following provisions: "4. That R. Wm. Kinmont and R. A. Kinmont shall be the general partners, and June Haines Kinmont, Grace Clarke Kinmont, June Haines Kinmont as natural guardian of and trustee for Robert Haines Kinmont and Beverly Jill Kinmont, minors, and Grace Clarke Kinmont as natural guardian of and trustee for Richard Clarke Kinmont and Susan Marie Kinmont, minors, shall be the special partners in the said *89 partnership. "5. The term for which the partnership is to exist is five (5) years, unless earlier dissolved by agreement of the partners. "6. The amount of cash and the agreed value of the property contributed by the general and limited partners is as follows: "R. Wm. Kinmont
$6,000.00
18.75%
R. A. Kinmont
6,000.00
18.75%
June Haines Kinmont
6,000.00
18.75%
Grace Clarke Kinmont
6,000.00
18.75%
June Haines Kinmont,
Natural Guardian
and trustee for
Robert Haines Kin-
mont and Beverly
Jill Kinmont, mi-
nors
4,000.00
12.50%
Grace Clarke Kinmont,
Natural guardian of
and trustee for
Richard Clarke Kin-
mont and Susan
Marie Kinmont, mi-
nors
4,000.00
12.50%
"7. The general partners may at any time one (1) year from this date return the contributions of said limited partners, and the limited partners, if they so elect, demand return of said contributions." It was also provided in the agreement that the partnership net profits were to be distributed in the same percentages as the contributions to the partnership. The partnership acquired some of the assets and liabilities of the corporation. The minutes of the meeting of the board of *90 directors of the corporation held on September 7, 1942 indicate that some of the corporation's assets were to be leased to the partnership and other assets were to be sold to it outright. The corporation itself continued in existence for the purpose of holding a certificate of necessity and a quantity of tools held under lease from the War Department. The certificate and the leases were not transferable. Among the liabilities of the corporation transferred to the partnership were notes payable to William and Ralph in the amount of $3,500 each and accrued salaries to William and Ralph in the amounts of $8,694.05 and $9,769.08, respectively. These amounts were recorded on the books of the partnership as the capital contributions of the two petitioners and their wives. On September 1, 1942, Grace Clarke Kinmont, as trustee for her two minor children, and June Haines Kinmont, as trustee for her two minor children, each executed a promissory note payable to the partnership in the amount of $4,000. These notes purported to represent a capital contribution to the partnership of $2,000 on the part of each of the four minor children. The notes were noninterest-bearing and they were payable *91 in 90 days. None of the children owned any property or had any separate estates. Each of the notes was marked as paid in full in May, 1943, with interest, even though the notes themselves did not call for any interest. Letters of guardianship appointing June and Grace as guardians of their respective children were not issued until January 6, 1943, some four months after the execution of the partnership agreement and the promissory notes. In April 1944 the partnership was dissolved and its assets were transferred to the corporation, which also assumed the partnership liabilities and proceeded to carry on the manufacturing and sales operations. The net income of the partnership for the fiscal years ended August 31, 1943 and 1944, as adjusted, was $214,296.95 and $131,016.97, respectively. The corporation reported a series of losses on its returns filed for the fiscal years ended August 31, 1946 through 1950. Sometime in this period the corporation was forced to sell its machinery and equipment at public auction to pay off its creditors and by 1950 the corporation was left without any assets. June and Grace each filed reports in the Superior Court of the State of California as *92 guardians of their respective children. In the first report filed by each of them, dated November 1943, there appeared an item representing income from the partnership for the fiscal year ending August 31, 1943 in the amount of $7,070.48. There were also, in each report, credits representing payments of Federal income taxes for the minors in the amount of $1,981 and credits representing payment of the notes to the partnership in the amount of $4,160. Each report then showed a cash balance of $5,404.88. In the second report filed by each of the guardians in March 1945 there appeared in each report a charge representing the payment of Federal income taxes in the amounts of $1,981 and $650.36. Each report then showed a balance of "cash on hand on deposit in bank" in the amount of $2,358.32. The following paragraph also appeared in each report: "That the general partners of the limited partnership heretofore referred to, on the 30th day of April, 1944, did according to law cancel and terminate the said limited partnership in which the wards of your petitioner had a 12.50% interest by the return of capital in the following manner, to wit: said general partners issued their notes to your *93 petitioner in the sum of $15,230.80 each calling for 5% per annum interest on the capital so invested by the said wards as limited partners; that thereafter, to wit: on the 31st day of May, 1944, the corporation which received the assets and assumed the liabilities in accordance with the transfer of the business from the partnership to the corporation and the cancellation of all leases held by the partnership from the corporation assumed the liability of the general partners on said notes and agreed to issue the corporate notes in cancellation of the notes previously held by your petitioner; that your petitioner accepted said notes in lieu of the cash value of the interest therein; and that said corporate notes provide for the payment of 5% interest per annum which your petitioner is informed and verily believes and, based upon such information and belief, alleges said notes are as successful an investment as your petitioner could obtain from the investment in any Government bonds or investment of like nature." The third report filed by June, as guardian of her two minor children, in November 1947, showed a balance of cash on hand in the amount of $8,046.36. The fourth report, filed *94 by her in May 1949, showed a cash balance of $714.75 and it also showed that $7,000 of the guardianship funds were used to purchase unimproved real property in Los Angeles County. The third report filed by Grace, as guardian of her two minor children, in November 1947, showed a cash balance of $863.24 and it also shows that $7,000 of the guardianship funds were used to purchase unimproved real property in Los Angeles County. The property was placed in the names of the two minors. The fourth report filed by Grace as guardian in May 1949, after showing a credit of $440 for leveling off the real property purchased out of guardianship funds, and other credits, showed a final balance of cash on hand in the amount of $64.15. During the years 1948 and 1949 Ralph and his wife, Grace, built a house and made other improvements, for a total cost in excess of $59,898.08 on the property which had been purchased with guardianship funds. To make these improvements they borrowed $15,000 from a bank on a note and trust deed authorized by the Probate Court of Los Angeles County, on March 23, 1950, and the balance of the funds was contributed by Ralph and Grace from their community property. Subsequently, *95 they built a swimming pool and other improvements upon this property and increased the above mentioned indebtedness to $20,000. Ralph and his family use this house with the other improvements as their residence. Petitioners did not, for Federal tax purposes, in good faith and with a business purpose, join together with their respective minor children in the present conduct of a partnership. Opinion The issue is whether the petitioners' four minor children are to be recognized as partners for Federal tax purposes in the partnership from the time of its formation in September 1942 until the date of its termination in April 1944. The respondent does not contest the membership of the wives in the partnership because the property is all community property and the tax would be the same if they were not partners. The test to be applied in deciding the question was set forth by the Supreme Court in : "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective *96 abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" We have studied the record carefully and are convinced that no bona fide intent existed to have the four minor children as valid members of the partnership. In 1942 the petitioners were equal stockholders of all of the outstanding stock of the Kinmont Manufacturing Company, a corporation which had been in existence since 1919, and it is significant that the partnership was formed in September of 1942 to take over the corporation's business when the surge of war profits was certain. After about a year and a half of extremely profitable activity, the partnership was terminated, simply because family partnerships were faring badly in the courts in income tax cases, and the business operations were once again resumed by the old corporation. Petitioners argue the status of a family partnership, with the children included as limited partners, was attained when the partnership was formed on *97 September 15, 1942. Since the oldest child was then six, it is obvious it was not contemplated the children would contribute any services to the partnership during the years in issue. And there was no real contribution of capital to the partnership by the children. The children had no separate estates. Under the circumstances, the giving of two unsecured $4,000 notes to the partnership by the mothers as guardians for the children, hardly satisfies the requirement of contribution of capital. , affirming Memorandum Opinion of this Court [;). It probably was the understanding that the notes would be paid out of partnership profits - and they ultimately were so paid - but it cannot be said the children made any contribution of capital, such as might be used to acquire partnership property to be used in the partnership business. While there is no ready "test" that will determine whether or not members of the family will be considered members of a partnership, we have said "the lack of a contribution of capital is an important factor which weighs heavily against the taxpayer who contends that another member of *98 his family is a bona fide partner for tax purposes." , affd. sub nom. . There are other factors which tend to show there was no present intent on the part of petitioners to operate the business during the years in question with their children as partners. The guardians of the children took absolutely no part in the partnership's activities. An examination of the guardianship report filed with the court is revealing. The net income of the partnership for the fiscal years ended August 31, 1943 and 1944, as adjusted, was $214,296.95 and $131,016.97, respectively. While the purported partnership interest of each of the minor children was approximately 6 per cent, we find that only a fraction of their shares of the income appeared in the guardianship reports. When the partnership was terminated in 1944 and its activities taken over by the corporation, each of the minor children was given a promissory note of the corporation in April 1946 in the amount of $13,501.94, which apparently represented the portion of the partnership earnings still due to each child. These notes *99 were never paid by the corporation. It also appears that the cash that did appear in the guardianship accounts was withdrawn to purchase unimproved real property. Petitioner Ralph Kinmont built a residence and other improvements, for a total cost in excess of $59,000, on the real property purchased with the funds withdrawn from his children's guardianship accounts. By 1949 the guardianship accounts filed by the two wives showed cash balances of $64.15 and $714.75. This history rather indicates continuing control by the taxpayers over the partnership income purportedly belonging to the children. The partnership agreement itself is a factor to consider. Ralph and William were the only general partners and the management and control of the partnership were in their hands, just as it was before. Nothing in actuality was changed as far as economic control was concerned. The general partners alone could, at any time one year from the date of formation, return the contributions of the limited partners, who were the wives and the minor children. Checks could be signed only by the general partners. It is true that a limited partnership will be given effect under the Federal tax laws "but *100 it must pass through the mill of scrutiny the same as any other." As the Court pointed out in the Roughan case, the fact that the petitioners chose to limit the activities by contract of the other parties certainly does not put them upon any stronger footing. Petitioners make an alternative argument that there was a gift by petitioners to the four children of a 25 per cent share in the partnership. There is no merit in the argument. Our holding that the children's notes lacked substance as capital contribution does not mean the two $4,000 notes were not consideration for the partnership shares allotted to the children, sufficient to preclude any idea of a gift transaction. We hold that the petitioners, for Federal tax purposes, did not, in good faith and with a business purpose, join together with their respective minor children in the present conduct of a partnership. Decisions will be entered under Rule 50.